# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JOSEPH A. GOLDICK,                    :

     Petitioner,                    :        Case No. 3:11cv00441

 vs.                                  :        District Judge Timothy S. Black
                                          Chief Magistrate Judge Sharon L. Ovington

WARDEN, ROSS CORRECTIONAL          :
INSTITUTION,[1]
                                      :
     Respondent.

                                      :

# REPORT AND RECOMMENDATIONS[2]

## I.    <u>Introduction</u>

Petitioner Joseph A. Goldick is serving a ten-year prison sentence due to his aggravated-burglary and felonious-assault convictions in state court. He brings this case *pro se* seeking a writ of habeas corpus under 28 U.S.C. §2254. He seeks habeas relief that either effects his release from incarceration or remands his case to state court for resentencing.

The case is before the Court upon Goldick's Habeas Petition (Doc. #1), Respondent's Answer/Return of Writ (Doc. #3), Goldick's Reply (Doc. #6), and the record as a whole.

---

[1]  Mark R. Oppy is the Warden of the Ross Correctional Institution.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

**II.**     **Procedural and Factual Background**

**A.**     **Trial and Direct Appeal**

Gerald Skapik was at home in his apartment during the early-morning hours of July 8,

2007 when an intruder burst through his door and attacked him.  A jury later concluded that

Petitioner Goldick was the intruder/attacker, not crediting his alibi defense.  The Ohio Court

of Appeals described the prosecution's trial evidence as follows:

> Skapik testified that he had been acquainted with Goldick and his
> family for many years and that he also knew Goldick's former wife and
> current girlfriend, Penny Griffin Goldick ("Griffin").  Skapik stated that he
> had asked Griffin out on dates in the past, but not in recent years.  Skapik,
> Goldick, Griffin, and two other acquaintances, Bo and Cynthia Webb, had
> been at a picnic together on Saturday, July 7, 2007.  Goldick, Griffin, and the
> Webbs had also stopped by Skapik's apartment for a brief and uneventful visit
> that evening.
>
> According to Skapik, he awoke in the early morning hours of July 8 to
> the sound of pounding on his door.  Through the peephole, he could see that
> Goldick was kicking his apartment door.  Goldick eventually broke down the
> door.  After entering the apartment, Goldick knocked Skapik over a coffee
> table, grabbed his head, and beat him for approximately five minutes while
> asking questions about Griffin.  Skapik testified that Goldick held him by his
> hair, and hit and kicked him about the head, stomped on his knee and hand,
> walked through the apartment calling for Griffin, and then left.
>
> After Goldick left the apartment, Skapik called the police.  When they
> responded to his apartment, Skapik refused medical treatment because he did
> not want to pay for it, preferring to go to the Veterans' Administration the next
> day.  Skapik did not remember talking to the police officer about allowing
> evidence technicians into his apartment, but the responding officer, Jeffrey
> Thomas, testified that Skapik did not want the technicians called because he
> did not want the inconvenience of waiting for them in the middle of the night.
>
> Although Skapik was the only witness to Goldick's involvement in the
> crime, Officer Thomas testified that he observed evidence of a disturbance in
> the apartment, including blood on the floor, a severely damaged door with a

2

deadbolt missing, and Skapik's "very prevalent" injuries.

On the morning of Sunday, July 8, 2007, Cynthia Webb awoke to find Goldick asleep outside her house. She testified that, when she went to get her newspaper, she could not open the door of her house because Goldick was asleep just outside the door. According to Cynthia, Goldick wore no shoes or shirt at the time, and he stated "I think I f_ _ ked up last night," claiming that he had "smacked" Skapik. Bo Webb likewise reported that, when he saw Goldick in his kitchen that morning (after Cynthia had let him in), Goldick stated that he had screwed up and "smacked" Skapik during the night. Bo told Goldick that he should apologize to Skapik.

A short time later, Bo went with Goldick to Skapik's apartment. Skapik's sister, Lynn Rae Skapik Smith, also went to the apartment that morning. Bo Webb and Smith testified that Skapik's face was badly bruised and swollen. They also stated that Goldick apologized to Skapik at that time.

Smith took her brother to the Veterans Administration on Monday, July 9, because he had not felt up to going on Sunday. When Skapik sought medical attention, he learned that his nose was broken and both cheekbones were shattered. He also had a concussion and two broken ribs. Skapik further testified that his dentures had been broken into eight pieces, causing significant lacerations in his mouth. He could barely walk for a week, took pain medicine for two weeks, and could not eat solid food for two weeks until his dentures were replaced and his mouth healed. Smith testified that her brother had black eyes for weeks and still has trouble with his knee as a result of the attack. Cynthia Webb testified that she helped Skapik for several weeks because of his injuries, including his inability to walk.

Skapik and the Webbs testified that there had not been much drinking at the picnic the day before the attack. Officer Thomas also stated that Skapik did not appear to be under the influence of alcohol when Thomas responded to his apartment.

Skapik filed a complaint with Detective Richard Davidson on July 10. He did not mention Goldick's apology at that time.

*State v. Goldick*, 2009 WL 1264276 at *2-*3 (Ohio Ct. App., May 8, 2009); *see* Doc. #4,

Exhibit 7.

The Ohio Court of Appeals described Goldick's trial evidence as follows:

> Goldick presented testimony from his mother, Anita Good, and from Griffin. Both women stated that, on July 7, they had spent the night at Good's house with Goldick and that he had not left at any time. Griffin also denied that she had left the house that night. Griffin stated that she and Goldick shared a bed and that she slept "like a bear cub" with Goldick's arms wrapped tightly around her such that she would have known if he had gotten out of bed. Good also testified that it was unlikely anyone could have left the house during the night without her knowledge, and that she had not heard anything noteworthy during the early morning hours of July 8. Griffin claimed that when she, Goldick, and the Webbs visited Skapik in the evening of July 7, she could smell that Skapik had been drinking. She also claimed that Skapik had asked for money and had been verbally abusive.

*State v. Goldick*, 2009 WL 1264276 at *4) (Ohio Ct. App., May 8, 2009); *see* Doc. #4, Exh. 7.

As noted previously, the jury found Goldick guilty of aggravated burglary and felonious assault. The trial court sentenced him to concurrent terms of imprisonment lasting ten years and eight years, resulting in an aggregate ten-year sentence.

Goldick, through counsel, next pursued direct appeal by raising four assignments of error on direct appeal:

> [His] conviction is not supported by sufficient evidence and is against the manifest weight of the evidence[.]

> [He] was denied a fair trial due to the admission of prohibited prior bad acts evidence and testimony that is collateral, unsubstantiated and more prejudicial than probative[.]

> [His] conviction must be reversed due to prosecutorial misconduct[.]

> [He] was denied a fair trial due to the ineffective assistance of trial counsel[.]

4

Cumulative errors deprived [him] ... a fair trial[.]

(Doc. #4, Exh. 5) (capitalization omitted; brackets added).  In May 2009, the Ohio Court of Appeals overruled each assignment of error and affirmed Goldick's convictions.  In September 2009, the Ohio Supreme Court denied him leave to appeal in September 2009.

### B.    **Petition for Postconviction Relief**

Meanwhile, on April 28, 2009, Goldick's counsel filed a Petition for Postconviction Relief in the Court of Common Pleas under Ohio Rev. Code §2953.21.  Goldick argued that his trial counsel provided constitutionally ineffective assistance in the following manner:

> Prior to trial, the prosecutor was unprepared and requested a continuance. Petitioner said no but Counsel promised that the Petitioner would receive COR bond if he agreed.  Based on this promise, Petitioner agreed. Counsel also told the Petitioner's witnesses that they must speak to the prosecutor.  Further, Counsel was informed that two of the State's witnesses had outstanding warrants but failed to use this information.  Counsel displayed an unprofessionally deferential relationship with the prosecutor.  The Petitioner wrote to the judge to fire trial counsel but rescinded this attempt due to the promise of bond, which was never granted.

(Doc. #4, Exh., 15, PageID at 253).  Rejecting Goldick's ineffective-assistance claim, the trial court overruled his §2953.21 Petition on September 28, 2009.  *Id.*, Exh. 18.

Just over one week later, Goldick filed a Notice of Appeal.  *Id.*, Exh. 19.  Soon after, in early November 2009, the Ohio Court of Appeals granted the State of Ohio's Motion to Dismiss, concluding incorrectly that the trial court had not yet ruled on Goldick's §2953.21. *Id.*, Exhs. 20, 21.  The Ohio Court of Appeals later sustained Goldick's Motion for Reconsideration, thus reviving his Notice of Appeal.  Further briefing ensued with Goldick raised three assignments of error:

5

Trial counsel provided ineffective assistance of counsel when he coerced [Goldick] into signing a time waiver with the promise of being released C.O.R. Bond.

[Goldick's] speedy trial rights were violated when the court, trial counsel and prosecutor promised [him] a C.O.R. bond in lieu of signing a time waiver.

Trial counsel provided ineffective assistance of counsel when he failed to use evidence to impeach the State's only corroborating witness.

(Doc. #4, Exh. 24).  The Ohio Court of Appeals overruled each assignment of error and affirmed the trial court's denial of Goldick's §2923.21 Petition.  *State v. Goldick*, 2010 WL 3610457 (Ohio Ct. App. Sept. 17, 2010); *see* Doc. #4, Exh. 26.  The Ohio Supreme Court denied him leave to appeal.

### C.  <u>Other Matters in State Court</u>

The state court record filed in the present case contains a document Goldick filed in the Ohio Court of Appeals on October 19, 2009.  He captioned it, "Brief of Appellant for Post Conviction Appeal."  (Doc. #4, Exh. 11).  The Ohio Court of Appeals concluded that Goldick's Brief was not properly before it.  *Id*., Exh. 12.

Goldick also filed a document with the heading "Common Pleas Court Montgomery [sic] Ohio."  He captioned it, "Notice of Appeal to the United States Court of Appeals for the Sixth Circuit."  *Id*., Exh. 13.  He must have filed this Notice in the Ohio Court of Appeals because on December 1, 2009, the Ohio Court of Appeals dismissed it for lack of jurisdiction to proceed, noting that Goldick "presumably seeks to appeal to the United States Court of Appeals for the Sixth Circuit."  *Id*., Exh. 14.

6

### III.  Goldick's Federal Habeas Petition

Goldick raises three grounds for habeas relief with facts in support:

**Ground One**:  Violation of Due Process with the introduction of prior bad acts evidence.

>    (1)  Prosecution introduced evidence of prior domestic violence conviction and record or prior contacts with police.

**Ground Two**:  Indictment did not charge all essential elements of the crime.

>    (1)  Indictment was silent as to *mens rea* for aggravated burglary.

**Ground Three**:  Ineffective assistance of counsel.

>    (1) Defense counsel did not object to prior bad acts evidence.

>    (2) Defense counsel did not object to police contacts evidence.

>    (3) Defense counsel did not move for a mistrial.

>    (4) Defense counsel did not impeach witnesses.

(Doc. #1, PageID at 5-10)(footnote added).  Rather than listing more than one sub-ground for relief in Grounds One and Two, Goldick fully develops his claims in a memorandum attached to his Petition and in his Reply.

### IV.  Discussion – Procedural Matters

"A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court.  The petitioner must first exhaust the remedies available in state court by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court."  *Smith v. State of*

*Ohio Dept. of Rehab. and Corrections*, 463 F.3d 426, 430-31 (6th Cir. 2006) (citing *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) (other citation omitted). A petitioner who has failed to exhaust his claims in the state courts and has no remaining avenue of relief in state court faces the possibility that his federal habeas grounds for relief are procedurally defaulted. *See Maples v. Stegall*, 340 F.3d 433, 437-38 (6th Cir. 2003). More specifically, "[a] habeas petitioner procedurally defaults a claim if:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default."

*Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*) (citations omitted); *see Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). In "an extraordinary case," a fundamental miscarriage of justice resulting from the petitioner's waiver of federal habeas review excuses a procedural default. *Maples*, 340 F.3d at 438; *see Eley v. Bagley*, 604 F.3d 958, 964 (6th Cir. 2010) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991)).

Respondent argues that Goldick committed a procedural default as to part of his first ground for relief by not objecting at trial to the introduction of certain prior bad acts evidence. Goldick's procedurally defaulted bad-acts-evidence claim, according to Respondent, focuses on defense counsel's failure to object to the admission of information about Goldick's history of contacts with Dayton police officers.

Respondent is correct as a historical matter that defense counsel did not object during

8

trial to admission of this particular evidence.  The Ohio Court of Appeals reported as much on Goldick's direct appeal, stating that he "did not object at trial to the questions about how the police located him ...." (Doc. #4, PageId at 194).  Review of the state trial transcript confirms the specifics:  defense counsel did not object the prosecution's questions to Officer Thomas about how he located Goldick (by finding his address in Dayton police records), and defense counsel did not move to strike Officer Thomas's brief statement, "Dayton Management System did have him at [a certain address] through various contacts the Dayton Police Department has had."  (Doc. #4, PageID at 519); *see id*., PageID at 510-25.  The lack of an objection to this testimony triggered, on direct appeal, the contemporaneous objection rule under which the Ohio Court of Appeals reviewed the admission of this testimony for plain error.  The Ohio Court of Appeals concluded that no plain error had occurred.  (Doc. #4, PageId at 194).

To the extent Goldick bases ground one – *i.e.*, his prior-bad-acts/due process claim – on the admission into evidence of Officer Thomas' "various contacts" testimony, Goldick procedurally defaulted under Ohio's contemporaneous objection rule because the rule "constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice."  *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  The fact that the Ohio Court of Appeals reviewed this claim for plain error does not relieve Goldick from this procedural default.  *See Bagley*, 380 F.3d at 968-69; *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.")

9

(citation omitted).

Respondent also contends that part of Goldick's ineffective assistance of counsel claim (his third ground for relief) is barred by procedure default.  The specific claim at issue here is that his counsel provided constitutionally ineffective assistance by failing to impeach the credibility of two state witnesses – Beau Webb and Cindy Webb.

On direct appeal, Goldick did not raise this particular challenge to his counsel's representation.  When he attempted to raise it during his postconviction-relief proceedings, the Ohio Court of Appeals applied *res judicata* as follows:

> A petition for post-conviction relief based on ineffective assistance of counsel is subject to dismissal on *res judicata* grounds where the ineffective assistance of counsel claim could otherwise have been raised on direct appeal without resorting to evidence outside the record.  *State v. Lentz* (1994), 70 Ohio St.3d 527, 529-30, 639 N.E.2d 784.  We note that Goldick concentrates a significant portion of his argument for ineffective assistance on citations to the record.  Defense counsel's tactical decisions regarding the use of witness impeachment evidence should have been raised on direct appeal.  Thus, this claim is barred by *res judicata.*

(Doc. #4, Exh. 26, PageID at 319).  As applied by the Ohio courts, "*res judicata* is an adequate and independent state ground for barring habeas review of constitutional claims." *Bagley*, 380 F.3d at 967.  As a result, Goldick's failure to raise this claimed instance of ineffective assistance of counsel constituted a procedural default.  *See id*.

Neither of Goldick's procedural defaults can be forgiven by blaming defense counsel.  As discussed below, defense counsel did not provide constitutionally ineffective assistance either by failing to object to the admission of Officer Thomas' "various contacts" testimony or by not impeaching two state witnesses.  *Supra*, §V(D).  Consequently, defense counsel's

10

allegedly ineffective assistance does not serve as cause for Goldick's procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000).

Goldick also cannot show prejudice caused by his counsel's failure to object because the admission of Officer Thomas "various contacts" testimony was isolated to one sentence and did not include any additional information about Goldick's contacts with Dayton police. Even if defense counsel erred by not objecting to the "various contacts" testimony or by not impeaching certain witnesses, such errors produced no prejudice given the strong evidence of Goldick's guilt – including the victim's testimony as well as prosecution witnesses who reported that soon after the events in question, Goldick admitted to beating the victim.

Additionally, Goldick has not shown that his is "an extraordinary case" involving a fundamental miscarriage of justice. This is so at least for the reason that the victim's testimony and testimony by other prosecution witnesses provide ample support for Goldick's convictions. *See Coleman*, 501 U.S. at 749-50, 111 S.Ct. at 2564-65; *see also Bagley*, 604 F.3d at 964; *Maples*, 340 F.3d at 438.

Accordingly, two of Goldick's sub-grounds for relief are barred by procedural default: (1) his claims in Grounds 1 and 3 related to the admission of Officer Thomas's "various contacts" testimony; and (2) his claim identified in the fourth sub-ground of his Third Ground for Relief – ineffective assistance of counsel based on defense counsel's failure to impeach two prosecution witnesses.

## V.    Discussion – Merits

Goldick's remaining (non-defaulted) claims fall into three categories: due process –

11

prior-bad-acts evidence; due process – defective indictment; and constitutionally ineffective assistance of trial counsel.  The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to Goldick's claims because he filed his Petition after the AEDPA became effective (in April 1996).  *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008).

A.      **<u>AEDPA Standards</u>**

The AEDPA significantly constricts the reach of the writ of habeas corpus "'with respect to claims adjudicated on the merits in state court.'"  *Coomer v. Yukins*, 533 F.3d 477, 484 (6th Cir. 2008) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495 (2000)).  A merit-based, state-court decision does not warrant habeas relief under the AEDPA "unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. §2254(d)(1); *see Washington v. Renico*, 455 F.3d 722, 728 (6th Cir. 2006).  "The [AEDPA's] 'contrary to' clause is satisfied 'if the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts."  *Villagarcia v. Warden*, 599 F.3d 529, 533 (6th Cir. 2010) (brackets in *Villagarcia*) (quoting, in part, *Williams*, 529 U.S. at 413).

"Under [the AEDPA's] 'unreasonable application' clause..., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  *Villagarcia*, 599 F.3d at

533 (quoting *Williams*, 529 U.S. at 411); *see Harrington v. Richter*, 562 U.S.__, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt."  *McKinney v. Ludwick*, 649 F.3d 484, 488 (6th Cir. 2011) (quoting in part *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)) (other citations omitted).

### B.    <u>Due Process and Prior-Bad-Act Evidence</u>

To obtain federal habeas relief, Goldick must do more than assert that the trial court erred under state law by admitting into evidence information about his alleged prior bad acts. "[A] simple error of state law is not cognizable on federal habeas review, absent a showing that the error compromised the Petitioner's due process."  *Jackson v. Bradshaw*, 681 F.3d 753, 780 (6th Cir. 2012) (citing *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871 (1984)). Indeed, "rulings regarding the admission or exclusion of evidence are usually not to be questioned in a federal habeas corpus proceeding."  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988) (internal comma omitted) (citations omitted).  Goldick must therefore demonstrate – and does claim – that the trial court's admission of prior-bad-act evidence deprived him of a fundamentally fair trial in violation of the Due Process Clause of the Fourteenth Amendment.  *Miller v. Francis*, 269 F.3d 609, 621 (6th Cir. 2001) (citing *Cooper*, 837 F.2d at 286).

The Ohio Court of Appeals explained and rejected this due-process claim as follows:

> Goldick's girlfriend, Griffin, testified on direct examination that he had been with her throughout the night of the attack.  On cross-examination, the state elicited testimony from Griffin that Goldick had "loosened" her lower

13

teeth in a 2003 incident of domestic violence.  She denied that he had knocked her teeth out, stating that although Goldick had "loosened" the teeth, she had lost them in a car accident.  The prosecutor also elicited testimony that Goldick had been convicted of domestic violence against Griffin in 2005.  When Goldick objected at the end of this exchange and moved for a mistrial, the prosecutor stated that she had been trying to show Griffin's motive to fabricate testimony and to lie for Goldick because she was afraid of him.  The prosecutor insisted that she was offering this evidence to show the witness's fear, not that Goldick is a bad person:  "I'm trying to show that she is not honest, because she is afraid of him and she is lying for him and this is what she has been doing for the past four or five years."

When Goldick objected, the court initially expressed concern about the lack of foundation for the state's questions and offered to do some research on the matter.  Then, at the end of Griffin's cross-examination, the court instructed the jury as follows:  "'[T]here was a question asked earlier about a domestic violence situation and an answer came out that was objected to.  I am going to instruct you that you must disregard that answer and it will be stricken from the record.  Earlier there was a question about domestic violence as well that did come out, and there was no objection.  However, I am going to ask you to not consider the prior conviction for any purpose in this matter.  Okay.  Although the answer won't be stricken you are not to consider it for the purposes of any prior conviction on the part of the defense.  And it is not evidence.  Of course, in the act in this particular incidence.  That is not what it is used for.  It is not evidence of any violence in this particular situation."

The trial court did not abuse its discretion in handling Goldick's objection as it did.  In this case, the discussion of Goldick's prior arrests was brief and was promptly followed by a curative instruction. The trial court also gave a general instruction before the jury's deliberations reminding the jury not to consider any statement it had been told to disregard.  The jury can be presumed to have followed the court's instructions, including instructions to disregard testimony.  *State v. Zuern* (1987), 32 Ohio St.3d 56, 62, 512 N.E.2d 585.  The trial court did not abuse its discretion in denying the request for a mistrial.  See *State v. Glenn* (1986), 28 Ohio St.3d 451, 455, 504 N.E.2d 701; see *State v. Warren* (1990), 67 Ohio App.3d 789, 799, 588 N.E.2d 905.

(Doc. #4, Exh. 7, PageID at 192-93).

As a brief aside, this section of the Ohio Court of Appeals' decision does not refer

14

directly to the Due Process Clause or to the fundamental fairness of Goldick's trial.  *See* Doc. #4, Exh. 7, PageID at 192-93.  This matters little under the AEDPA:  "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted."  *Johnson v. Williams*, __U.S.__, 133 S. Ct. 1088, 1096 (2013).  Neither Goldick nor the state record presents a reason sufficient to rebut the presumption that the Ohio Court of Appeals' decision encompassed and rejected as meritless his claim that the admission of prior bad acts evidence violated his rights under the Due Process Clause.  The AEDPA standards therefore apply to this claim.  *See id*.

Turning to the merits, Goldick has not shown that the Ohio Court of Appeals' rejection of his due process claim was contrary to or involved an unreasonable application of "clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).  As the United States Court of Appeals for the Sixth Circuit has explained:

> When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. Nonetheless, "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'"  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"

> In this case, the admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent. There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003) (many internal citations omitted). The Sixth Circuit also recognized that *Spencer v. Texas*, 385 U.S. 554, 563-64, 87 S.Ct. 648 (1967) "rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served." *Bugh*, 329 F.3d at 512-13.  The Sixth Circuit added, "While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644 (1997); *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496 (1988), it has not explicitly addressed the issue in constitutional terms." *Bugh*, 329 F.3d at 513.

Goldick's due process claim is closely analogous to, if not the same as, the petitioner's claim in *Bugh.*  Like Goldick, the petitioner in *Bugh* argued that the admission of certain evidence "served only to demonstrate that Bugh was a 'bad man,' and was so prejudicial that 'it poisoned the trial and violated [his] right to a fundamentally fair trial." 329 F.3d at 512.  In rejecting these arguments, the Sixth Circuit reasoned, in part, "[T]he admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent.  There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence...." *Id.*; *cf. Maldonado v. Wilson*, 416 F.3d 470, 477 (6th Cir. 2005) ("The Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments.").  Consequently, even if the trial court's admission of

16

prior-bad-act evidence is viewed as an egregious error, Goldick has not made the mandatory

AEDPA showing that the Ohio Court of Appeals' rejection of this claim constituted an

unreasonable application of Supreme Court caselaw.  *See Harrington*, 562 U.S. at __, 131 S.

Ct. at 786-87 ("As a condition for obtaining habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal court

was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement.").

Goldick argues that *Bugh* is distinguished from his case because *Bugh* involved a

claim under the Confrontation Clause rather than the Due Process Clause.  He maintains

therefore that *Bugh*'s discussion of due process and the admission of prior bad acts evidence

was dicta.  Although Goldick is correct that *Bugh* involved a claim under the Confrontation

Clause, *Bugh* also involved the petitioner's separate claim under the Due Process Clause

challenging the admission information about his prior bad acts.  The Sixth Circuit, moreover,

separately analyzed these distinct constitutional claims and each claim involved different

evidence and different state rules of evidence.  *See Bugh*, 329 F.3d at 501-513.  For these

reasons, the rejection in *Bugh* of the petitioner's due process claim was not dicta, and

Goldick's arguments to the contrary lack merit.

Goldick correctly recognizes the general principle that "'[w]hen an evidentiary ruling

is so egregious that it results in the denial of fundamental fairness, it may violate due process

and thus warrant habeas relief."  (Doc. #6, PageID at 671) (quoting *Bugh*, 329 F.3d at 512).

Goldick, however, does not point to any Supreme Court case – particularly any case decided

more recently than *Bugh* – finding a due process violation caused by the admission of prior-bad-act evidence during a state criminal trial. *See* Doc. #1, PageID at 5, 22-27; *see also* Doc. #6, PageID at 671-75.  This is so even though Goldick points to a handful of Supreme Court cases in support of his due process-propensity claim.  Nearly all his Supreme Court cases pre-date *Bugh*; some were addressed in *Bugh*; and all fail to alter the continuing validity of *Bugh*'s discussion of existing Supreme Court cases addressing due process and propensity evidence.  *See Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013 (1996); *see also Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004); *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558 (1982); *Old Chief*, 519 U.S. 172, 117 S. Ct. 644; *Michelson v. United States*, 335 U.S. 469, 69 S. Ct. 213 (1948).  Goldick also relies on various Circuit Court of Appeals cases that do not point to the existence of a post-*Bugh* Supreme Court case law that conflicts with *Bugh*'s discussion or otherwise clearly establishes the due process principle he seeks to invoke.  *E.g., United States v. Blauvelt*, 638 F.3d 281 (4th Cir. 2011); *Seymour*, 224 F.3d 542 (6th Cir. 2000); *United States v. Queen*, 132 F.3d 991 (4th Cir. 1997); *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988); *United States v. Beasley*, 809 F.2d 1273, 1280 (7th Cir. 1987).

Accordingly, Goldick has not demonstrated that the Ohio Court of Appeals' rejection of his due process claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  The AEDPA affords Goldick no  habeas relief under the AEDPA on his first ground for relief.

## C.    Due Process and Goldick's Indictment

Goldick contends that the indictment entered against him violated his rights under the

18

Due Process Clause by failing to specify the essential *mens rea* element in support of the

aggravated burglary charge.

The indictment charged that on July 8, 2007, Goldick "by force, stealth or deception,

did trespass in an occupied structure ... when another person, other than an accomplice of the

offender, was present, with purpose to commit in the structure ... any criminal offense, to

wit: felonious assault, and did then inflict or attempt or threaten to inflict physical harm to another...."

(Doc. #4, Exh. 1).  The Ohio Court of Appeals rejected Goldick's challenge to the

indictment, first noting that his argument relied on two cases:  *State v. Colon,* 118 Ohio St.3d

26, 885 N.E.2d 917, 2008-Ohio-1624 *("Colon I")* and *State v. Colon,* 119 Ohio St.3d 204,

893 N.E.2d 169, 2008-Ohio-3749 ("*Colon II* ").  The Ohio Court of Appeals explained,

> *Colon I* held that a robbery indictment for a violation of R.C.
> 2911.02(A)(2) is defective if it fails to state that the physical harm was
> *recklessly* inflicted, threatened, or attempted because, in omitting the mens rea,
> the indictment omits one of the essential elements of the crime. *Colon I* at ¶ 10.
> *Colon II* narrowly limited the holding in *Colon I.*[3]

(Doc. #4, Exh. 7, PageID at 184)(footnote added).  Then, after quoting the indictment, the

Ohio Court of Appeals examined its language:

> We have previously held that such language, which tracks the language
> of the aggravated burglary statute, R.C. [Ohio Rev. Code §] 2911.11(A),
> includes two mental states. "First, knowingly is incorporated by reference in

---

[3] "In *State v. Horner,* 126 Ohio St.3d 466, 473, 935 N.E.2d 26 (2010), the Ohio Supreme Court overruled its decisions in *Colon I* and *Colon II* (holding that where the indictment tracks the language of the criminal statute, it is not defective for failing to identify a culpable mental state when the statute itself fails to specify a mental state)."  *Dixon v. Jeffreys*, 2:11-CV-086, 2011 WL 6009695 (S.D. Ohio Oct. 5, 2011)(Deavers, M.J.), Report and Recommendation adopted, 2:11-CV-086, 2011 WL 6019102 (S.D. Ohio Dec. 1, 2011)(Graham, D.J.).

19

the predicate offense of trespass.  Second, the mental state of purposefully is written in the statute." *State v. Day,* Clark App. No. 07-CA-139, 2009-Ohio-56, at ¶ 23, citing *State v. Davis,* Cuyahoga App. No. 90050, 2008-Ohio-3453; *State v. Smith,* Montgomery App. Nos. 21463 and 22334, 2008-Ohio-6330, at ¶ 76. On this basis, we have rejected the assertion that the *Colon* holdings apply to an aggravated burglary indictment that tracks this language.  *Day* at ¶ 23; *Smith* at ¶ 76.

(Doc. #4, Exh. 7, PageID at 184).  For these reasons, the Ohio Court of Appeals dismissed

Goldick's challenge to the indictment.

The AEDPA affords Goldick no habeas relief on his constitutional challenge to the

indictment.  "An indictment which fairly but imperfectly informs the accused of the offense

for which he is to be tried does not give rise to a constitutional issue cognizable in habeas

proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986) (citations omitted); *see*

*Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) ("Beyond notice, a claimed deficiency in a

state criminal indictment is not cognizable on federal collateral review.") (citation omitted).

In state criminal prosecutions, "due process mandates only that the indictment provide the

defendant with 'fair notice of the charges against him to permit adequate preparation of his

defense.'  Fair notice has been given when 'the offense [is] described with some precision

and certainty so as to apprise the accused of the crime with which he stands charged.  Such

definiteness and certainty are required as will enable a presumptively innocent man to

prepare for trial.'" *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting in part

*Koontz v. Glossa*, 731 F.3d 365, 369 (6th Cir. 1984)).

The indictment charging Goldick with aggravated burglary had provided him with

sufficient notice of the aggravated burglary charge to satisfy the Due Process Clause.  The

indictment identified Goldick, informed him of his aggravated-burglary charge, described the charge in language tracking Ohio's aggravated-burglary statute, and citing the statute by its Ohio Revised Code section number.  In addition, the indictment identified the date on which the aggravated burglary allegedly occurred and the specific address where it occurred.  To conclude, as Goldick does, that the indictment failed to provide him with constitutionally sufficient notice could only be done by ignoring the specific information the indictment provided.

Goldick contends that the indictment was insufficient because it failed to identify the essential *mens rea* element of aggravated burglary – "recklessly," he says, citing Ohio Rev. Code § 2901.21(B).  In contrast, the Ohio Court of Appeals explained that Ohio's aggravated-burglary statute contains two mental states, neither of which is "recklessly": "First, knowingly is incorporated by reference in the predicate offense of trespass.  Second, the mental state of purposefully is written in the statute." (Doc. #4, Exh. 7, PageID at 184). Goldick simply disagrees with the Ohio Court of Appeals as a matter of state law by arguing that the aggravated-burglary charge required the state to prove he acted recklessly.  This state-law claim is not cognizable in the present habeas case.  *See Jackson*, 681 F.3d at 780. Because the indictment provided Goldick with actual and constitutionally sufficient notice of his aggravated-burglary charge, he has not shown that the Ohio Court of Appeals' decision was contrary to or involved an unreasonable application of Supreme Court caselaw.  *See Williams*, 467 F.3d at 535.

Accordingly, the AEDPA provides Goldick with no habeas relief on his second

21

ground for relief.

#### D.    Ineffective Assistance of Counsel

Goldick bases his claim of ineffective assistance of counsel (IAC) partly on his counsel's failure to object to, and move for a mistrial because of, the admission of prior-bad-acts evidence including police testimony about his past contacts with Dayton police.  He also contends that his trial counsel provided constitutionally ineffective assistance by failing to impeach the prosecution's witnesses.

The Ohio Court of Appeals' decision that Goldick's IAC claims lacked merit was not contrary to Supreme Court case law because the Ohio Court of Appeals correctly described the legal standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  *See* Doc. #4, Exh. 7, PageID at 196-97; Exh. 26, PageID at 316-20.  As a result, AEDPA review turns to whether the Ohio Court of Appeals unreasonably applied *Strickland*'s IAC standards.

To establish constitutionally ineffective assistance of counsel, a convicted defendant must show that his trial counsel's acts, errors, or omissions fell below an objective standard of reasonableness.  *Strickland,* 466 U.S. at 687-88, 104 S.Ct. at 2064.  This demanding standard requires the convicted defendant to establish that (1) defense counsel provided deficient performance and (2) the deficient performance prejudiced the defense so as to render his trial fundamentally unfair and the result unreliable.  *Id*.  Even when a habeas petitioner establishes both *Strickland* prongs, he shoulders a further heavy burden when attempting to gain federal habeas relief:

The Supreme Court has made clear that post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioners will succeed only in very limited circumstances....  For [the petitioner] to succeed..., he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Payne v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005); *see Harrington*, 562 U.S. at __, 131 S.Ct.

at 785.

The Ohio Court of Appeals addressed Goldick's IAC claim as follows:

Goldick claims that counsel was ineffective in failing to object to evidence of his prior bad acts.  In particular, he claims that the jury's questions about his presence on the Dayton MIS demonstrate that he was prejudiced by counsel's failure to effectively attack this evidence.

* * *

The jury's interest in knowing more about Goldick's prior contacts with the police, as evidenced by the questions submitted to the judge after Officer Thomas testified, does not establish a reasonable probability that the outcome of the trial would have been different if counsel had challenged this testimony. The scope of questioning is generally a strategic matter left to the discretion of defense counsel. Counsel could have concluded, as a matter of trial strategy, that drawing additional attention to Goldick's prior contacts with the police by objecting to this testimony would have been more problematic than helpful.

Although this assignment [of error] focuses primarily on the MIS records, we note that counsel did object to the questions about Goldick's prior convictions, and the jury was instructed not to consider this evidence. With respect to the testimony about Griffin's conversations on her cell phone in the hall and whether those conversations supported an inference that she had been coached about how to testify, we conclude that the testimony was so muddled that it is difficult to draw any conclusion about what Griffin might have said. Due to the nature of this testimony, we are unpersuaded that it was prejudicial or that counsel could have more effectively refuted it.

There is no basis to conclude that counsel's conduct fell below an objective standard of reasonableness or that, but for the alleged errors, the outcome of the trial would have been different. As such, we reject Goldick's claim that he was denied the effective assistance of counsel.

(Doc. #4, Exh. 7, PageID at 196-97) (internal citations omitted).

The Ohio Court of Appeals also found no IAC with regard to Goldick's contention that his counsel failed to impeach the prosecution's witnesses:

Goldick contends that he was provided ineffective assistance of counsel because his attorney failed to impeach the testimony of the State's witnesses with evidence that they both were subject to outstanding warrants for their arrest. The State's witnesses were identified as Beau and Cindy Webb. Their testimony bolstered that of Skapik who was the only witness who testified regarding Goldick's identity as his attacker. Goldick contends that disclosing the Webbs' warrants would have undercut their credibility and placed the outcome of the trial in question. He asserts this omission on the part of defense counsel falls below an objective standard of reasonable representation.

* * *

We ... note that evidence of the outstanding warrants would have been inadmissible to impeach the State's witnesses at trial pursuant to Evid. R. 616 since the evidence did not establish bias or mental defect. Nor did Goldick seek to use the evidence to contradict the witnesses' testimony, but merely to impeach their characters. Evid. R. 616(A), (B), & (C).

Significantly..., the scope of cross-examination is a matter of trial strategy and such debatable trial tactics do not establish ineffective assistance of counsel. *State v. Campbell,* 90 Ohio St.3d 320, 738 N.E.2d 1178, 2000-Ohio-183. "Reviewing courts must indulge in a strong presumption that counsel's conduct was not improper, and reject post-trial scrutiny of an act or omission that was a matter of trial tactics merely because it failed to avoid a conviction." *State v. Reid,* Montgomery App. No. 23409, 2010-Ohio-1686. In this instance, there is no indication that Goldick's counsel's performance fell below an objective standard which prejudiced Goldick.

(Doc. #4, Exh. 26, PageID at 318-20).

24

As to the incidents of IAC Goldick claims, the Ohio Court of Appeals correctly respected the high deference that must be given to trial counsel's strategic decisions. *See Strickland*, 486 U.S. at 689, 104 S. Ct. at 2065. The possible strategic reason identified by the Ohio Court of Appeals in regard to his first incident of IAC – objecting would have been more problematic than helpful – is both logical and reasonable. Objecting would have focused the jury's attention on what best remained a very short and isolated "various contacts" comment by Officer Thomas. The Ohio Court of Appeals also correctly noted that the impeachment evidence Goldick identifies was inadmissible at trial; it was, therefore, not an error for defense counsel to forego using it when cross-examining the prosecution's witnesses. The Court of Appeals' decision also closely adhered to the *Strickland* principals by avoiding the "distorting effects of hindsight ...." *Strickland* explains:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

466 U.S. at 689, 104 S.Ct. at 2065 (internal citation omitted).

Lastly, the Ohio Court of Appeals correctly found no prejudice caused by defense counsel in light of (1) the victim's strong testimony identifying Goldick as the perpetrator

25

and describing the details of his attack, and (2) the eyewitness testimony about Goldick's somewhat remorseful and apologetic conduct after the crimes had occurred.  *See Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

Accordingly, Goldick has not demonstrated that the Ohio Court of Appeals' rejection of his IAC claims was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  The AEDPA provides Goldick with no habeas relief on his third ground for relief.

## VI.    <u>Certificate of Appealability</u>

Before a petitioner may appeal the denial of his habeas petition, he must first obtain a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at 484.  If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling.  *Slack*, 529 U.S. at 484.

The conclusions reached in the instant Report are not debatable by jurists of reason and the case does not otherwise present issues sufficient to encourage Goldick to proceed further. Consequently, a certificate of appealability should not issue in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1. Joseph A. Goldick's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED and DISMISSED;

2. Goldick be denied leave to appeal *in forma pauperis*, and the Court CERTIFY under 28 U.S.C. §1915(a)(3) that any appeal he seeks to take from a Decision and Entry adopting this Report and Recommendation is not taken in good faith;

3. Goldick be DENIED a certificate of appealability under 28 U.S.C. §2253(c); and

4. This case be terminated on the docket of this Court.

May 30, 2013

                              s/Sharon L. Ovington
                                Sharon L. Ovington
                  Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).